IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>$58,080.00 IN UNITED STATES CURRENCY,<br><br>    Defendant. | Civil No. 8:18CV18<br><br>**COMPLAINT FOR FORFEITURE *IN REM*** |

COMES NOW the Plaintiff, United States of America, and for its cause of action against the Defendant, states and alleges as follows:

### Nature of the Action

1. This is an action to forfeit property to the United States for violations of 21 U.S.C. § 881.

### The Defendant *In Rem*

2. The Defendant property consists of a combined total of $58,080.00 in United States currency seized from Zachary Dafante Smith and Remy Ramone Perry on August 16, 2017, during a traffic stop on westbound Interstate 80 between Harrison and 126th Streets, in Omaha, Douglas County, Nebraska. The Defendant property is presently in the custody of the U.S. Marshals Service at Omaha, Nebraska.

### Jurisdiction and Venue

3. This Court has subject matter jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a). This Court also has jurisdiction over this particular action under 21 U.S.C. § 881.

4. This Court has *in rem* jurisdiction over the Defendant property pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district.

### Basis for the Forfeiture

6. The Defendant property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it constitutes 1) money, negotiable instruments, securities and other things of value furnished or intended to be furnished in exchange for a controlled substance in violation of the Controlled Substances Act, 2) proceeds traceable to such an exchange or 3) money, negotiable instruments and securities used and intended to be used to facilitate a violation of the Controlled Substances Act.

### Facts

7. On August 16, 2017, Douglas County Sheriff's Office Deputy David Wintle was patrolling Interstate 80 in Douglas County, Nebraska. He was driving westbound between Q and Harrison Streets when he saw a silver 2017 Audi Q3 travelling at a higher speed than the vehicle it was approaching from behind. The Audi did not change lanes to pass until it was approximately one car length from the vehicle ahead of it. The Audi's turn signal activated one flash before it crossed the left lane marker.

8. At 10:55 a.m., Dep. Wintle conducted a traffic stop on the Audi on the inside shoulder of westbound Interstate 80 between Harrison and 126th Streets. As Dep. Wintle exited his cruiser and approached the Audi, he could smell a spray. He could not determine if the odor was an air fragrance spray or a cologne/body spray, but he detected the same odor coming from the vehicle when he reached the driver's door window.

9. Dep. Wintle asked the driver, Zachary D. Smith, for his driver's license and the rental agreement. After he received the requested documents, Dep. Wintle asked Smith to sit in his cruiser so he could talk to him about the violations. Dep. Wintle then returned to the Audi and asked the passenger, Remy R. Perry, if he had a driver's license. Perry gave Dep. Wintle an Iowa driver's license. Dep. Wintle then spoke to Perry about their travel plans. Perry stated they were going to Omaha and headed "west" for a road trip. Perry stated they would be gone about a week.

10. Dep. Wintle returned to the cruiser, explained the violations to Smith and looked over his documents. The rental agreement showed Smith rented the vehicle in Des Moines on August 15, 2017; he was to return it on August 18, 2017. Dep. Wintle conducted a record check on both men and spoke to Smith about their travel plans. Smith stated they were "just driving right now"; they would be stopping in Lincoln, as he has family there. Smith said they would be gone for a couple of days. Smith said, "To be honest with you, we're going to see some girls" in Lincoln. Smith stated he had been arrested two years ago for possession of marijuana. Smith stated he worked at a furniture store. Dep. Wintle said he did not see any luggage in the vehicle. Smith confirmed they had no luggage with them.

3

11. Dep. Wintle asked Smith if he had any weapons, narcotics or large amounts of cash in the car, over $10,000.00. Smith stated "no" to all of the questions. Dep. Wintle asked Smith if he could search the car when he completed the stop. Smith stated Dep. Wintle could not search the car.

12. Dep. Wintle and his dog, Chet, are a Nebraska-certified canine detection team. Dep. Wintle had his dog with him in the cruiser during the traffic stop. At approximately 11:04 a.m., Dep. Wintle removed Chet from the cruiser and deployed the dog around the Audi. Dep. Wintle saw Chet alert three times during the sniff; Chet indicated on the driver's door and window.

13. At approximately 11:10 a.m., Douglas County Sheriff's Office Deputy Eric Olson arrived at the scene of the traffic stop. Dep. Wintle directed Perry out of the Audi. Perry said there were no weapons, narcotics or large amounts of cash, over $10,000.00, in the Audi. Dep. Wintle directed Perry to stand on the shoulder in front of the Audi.

14. Dep. Wintle and Dep. Olson began to search the Audi. Deputy Olson located a grey, plastic grocery sack in a grey backpack on the backseat; the sack held three rubber-banded bundles of U.S. currency. Dep. Wintle located a red duffle bag in the cargo area; it held a men's underwear package that contained twenty-three, rubber-banded bundles of U.S. currency. Dep. Wintle located a small plastic pill bottle that contained small amount of marijuana. He also found two marijuana "blunts". All three of these items were found on the backseat floor, near the front passenger seat. The deputies found two, empty duffle bags in the vehicle, one on the backseat and one in the cargo area.

15. Dep. Wintle asked Perry about the money in the vehicle. Perry stated the money in the grey backpack was his. He intended to use it for shopping and for bond money—"in case I get in any trouble." He said there was $30,000.00 in the backpack and it belonged to him.

16. Dep. Wintle asked Smith about the currency in the vehicle. Smith said all the money in the Audi belonged to his girlfriend. He was going to use it for birthday gift shopping. Then, Smith said there was $20,000.00 to $30,000.00 in the car. He was taking it to Lincoln to get girls and go New York on vacation. A few minutes later, Smith said there was "30 for him [Perry] and 30 for me" in the Audi. He said there "should be like $59,000.00" in the vehicle.

17. Because of Smith's and Perry's inconsistencies, Dep. Wintle called for a tow truck to tow the Audi to the Douglas County Sheriff's Office for further investigation. While waiting for the tow, Perry asked Dep. Olson, "Can't you just take the money and let us go?"

18. Also while waiting for the tow truck, Smith told Dep. Wintle his girlfriend, Yvette Villacorta, had given him $20,000.00 for birthday gift shopping. Smith then stated he took another $20,000.00 Wednesday evening and another $20,000.00 Thursday morning without Villacorta's knowledge. Smith said Villacorta's mother owns a restaurant and is "loaded".

19. At approximately 11:54 a.m., Dep. Wintle spoke to Villacorta over the telephone. Villacorta said Smith was going shopping at the outlet malls near Omaha. Villacorta did not know where else Smith was going since she was "irritated" with him when he left. Villacorta initially she gave Smith a couple thousand dollars, then changed it to "around $15,000.00." Villacorta stated she works at a nursing home and in the restaurant. Villacorta twice put Dep. Wintle on hold while they were speaking over the phone.

20. At the Sheriff's Office, Dep. Wintle conducted a discretionary sniff of the money found in the Audi. Dep. Wintle first had his canine, Chet, sniff the sterile locker room located inside the Canine Office at the Sheriff's Office. Chet did not indicate to the odor of controlled substances coming from any of the lockers. Dep. Wintle and Chet left the room, and Dep. Olson placed the seized money inside one of the lockers. Dep. Wintle and Chet returned to the locker room and Dep. Wintle deployed Chet around the room a second time. Chet indicated to an odor of controlled substances coming from the locker with the currency placed in it.

21. At approximately 1:10 p.m., following a *Miranda* advisement and waiver, deputies interviewed Perry. Perry stated he had been unemployed for a year or longer. He said he had two children, with another on the way. He said they were on a road trip for a few days and did not have a destination. He said the money in the backpack is his; he saved it from cleaning mobile homes and street gambling. Perry stated he played craps and blackjack, but he is not any good at blackjack. He said he had not filed an income tax return in two years. Perry stated all of the money in the grey backpack belonged to him, and it was three bundles of $10,000.00, each.

22. At approximately 1:24 p.m., following a *Miranda* advisement and waiver, deputies interviewed Smith. Smith said he worked at a furniture store and at a restaurant owned by his girlfriend's mother. Smith said he grossed $30,000.00 to $40,000.00 in 2016. Smith said Perry and he were traveling to Lincoln to pick up girls. Smith stated they would then fly somewhere with the girls. Smith stated he also did promotions for clubs. Smith stated Perry and he were going to fly to New York where he was going to meet with a musician promoter about the

musician performing at his girlfriend's, Villacorta's, birthday party on Saturday, August 19, 2017. During the interview, deputies noticed Smith smelled of marijuana.

### Claim for Relief

WHEREFORE, the Plaintiff, United States of America, prays the Defendant property be proceeded against for forfeiture in accordance with the laws, regulations and rules of this Court; that due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed; that the Defendant property be condemned, as forfeited, to the United States of America and disposed of according to law and regulations; that the costs of this action be assessed against the Defendant property; and for such other and further relief as this Court may deem just and equitable.

UNITED STATES OF AMERICA,
Plaintiff

ROBERT C. STUART
Acting United States Attorney

By: _____
NANCY A. SVOBODA (#17429)
Assistant U.S. Attorney
1620 Dodge Street, Suite 1400
Omaha, Nebraska 68102-1506
Tel: (402) 661-3700
Fax: (402) 345-5724
Email: nancy.svoboda@usdoj.gov

## VERIFICATION

STATE OF NEBRASKA    )
                    ) ss.
COUNTY OF DOUGLAS    )

Pursuant to Rule C(2), Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Assistant United States Attorney for the District of Nebraska, Nancy A. Svoboda, being first duly sworn, deposes and states the facts set forth herein are true and correct according to the best of her knowledge and belief.

*[signature]*
NANCY A. SVOBODA
Assistant U.S. Attorney

Subscribed and sworn to before me this 19th day of January, 2018.

GENERAL NOTARY - State of Nebraska
REBECCA K. LESSER
My Comm. Exp. June 9, 2019

*[signature]*
Notary Public

Pursuant to the rules of this Court, the United States of America hereby requests the trial of the above and foregoing action be held in Omaha, Nebraska, and be calendared accordingly.

*[signature]*
NANCY A. SVOBODA
Assistant U.S. Attorney

8